UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICIA JO I.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:20-CV-5832-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant's denial of Plaintiff's application for supplemental security income (SSI). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2.

## BACKGROUND

At issue is Plaintiff's most recent application for Supplemental Security Income (SSI) benefits, dated November 7, 2017, alleging disability commencing on January 1, 2000. AR 15, 253. Prior to this application Plaintiff had unsuccessfully sought SSI benefits in the past, and the ALJ did not reopen that record. AR 15, 58-83.

Plaintiff's most recent claim was also denied initially and upon reconsideration. AR 160, 172. Plaintiff then requested a hearing and appeared and testified before Administrative Law Judge Vadim Mozyrsky (the ALJ) on August 5, 2019. AR 32. On October 21, 2019, the ALJ issued a decision finding Plaintiff had not been under a disability at any time since the protective filing date. AR 26. Plaintiff timely appealed this decision to the Appeals Council. AR 234-35. On June 16, 2020, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1.

## STANDARD

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

## THE SEQUENTIAL EVUALUTAION

The definition of disability and the five-step sequential analysis of disability is set forth in 42 U.S.C. §423(d), 20 C.F.R. § 416.920 (b)–(f). Five questions are posed in sequence until a question is answered affirmatively or negatively in such a way that a finding of disability or non-disability is directed. The claimant and the ALJ share the burden at steps one through four. At step five, the burden shifts to the agency. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the protective filing date. AR 18.

At step two, the ALJ found that Plaintiff had severe impairments including obesity, diabetes mellitus with diabetic neuropathy, lumbago, asthma, anxiety, and depression. *Id*.

At step three, the ALJ found Plaintiff had only mild to moderate limitations in the four broad areas of functioning, and thus none of Plaintiff's impairments, alone or in combination,

met or medically equaled one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. AR 18-20. The ALJ noted Plaintiff's noncompliance with diabetes management. AR 21, 22. The ALJ considered that despite alleging debilitating mental health symptoms, Plaintiff remained on the same medication for 10 years though she does not feel it is effective, was not always compliant with the prescription, and did not seek counseling or other treatment for her mental health symptoms. AR 22, 37-38, 560, 770. Moreover, Plaintiff had no problems with personal care, and reported being able to participate in typical household activities. AR 22. She spent her days watching television, surfing the internet, and using Facebook and Instagram. AR 22-23. She also socialized with family and friends who came over to her house. AR 23.

Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with specific limitations as follows:

> [T]he claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can push/pull as much as she can lift/carry. She can stand, walk, or sit for six hours each in an eight-hour workday. She is limited to occasional climbing of ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, but never crawl. The claimant should avoid concentrated exposure to workplace hazards such as moving mechanical parts, unprotected heights, and operating a motor vehicle. She should avoid concentrated exposure to dust, fumes, and gases and other pulmonary irritants. She is limited to simple, routine, and repetitive tasks. She can make simple work related decisions.

AR 20.

At step four, the ALJ determined that Plaintiff had no past relevant work. AR 24. Plaintiff was 49 years old on the date she filed this SSI application. AR 24, 253.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff remains capable of performing. AR 24. Specifically, based on vocational expert (VE) testimony the ALJ concluded that Plaintiff could work as a hand

packager (DOT2 559.687-074), ticket seller (DOT 211.467-030), and electrical assembler (DOT 729.687-010). AR 25. Consequently, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. AR 25–26.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly discrediting some of the medical evidence, and failing to identify, at step five of the sequential evaluation, work existing in sufficient numbers in the national economy that Plaintiff remains capable of performing.

### I. Medical Evidence

#### a. Standard of Review

The regulations regarding evaluation of medical evidence have been amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their

persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2), 416.920c(a), (b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit has not yet had the opportunity to address the impact of the new regulations on the requirement that the ALJ provide "clear and convincing" reasons for rejecting an uncontradicted physician's opinion and "specific and legitimate reasons" for rejecting a contracted physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). However, Chief Judge Ricardo S. Martinez recently opined that he believes the Ninth Circuit will not likely alter the "clear and convincing" standard because it is "based on evidentiary principles in administrative law, and not on a hierarchy of opinions." *Kathleen G. v. Comm. Soc. Sec.*, No. 2:20-cv-461-RSM (W.D. Wash. Nov. 10, 2020) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) and *White Glove Building Maintenance, Inc. v. Brennan*, 518 F.2d 1271 (9th Cir. 1975)).

Thus, while the new regulations ask the ALJ to explain, at a minimum, how the ALJ considered the supportability and consistency factors of a medical opinion, if the medical opinion is uncontradicted the ALJ must still cite "clear and convincing" reasons for rejecting it, and if it is contradicted, the ALJ must still give "specific and legitimate" reasons for rejecting it.

      b.   <u>Plaintiff's Arguments</u>

          i.   <u>Brigitte Engelhardt, M.D.</u>

Plaintiff claims the ALJ failed to provide legally sufficient reasons to partially reject limitations assessed by consultative physician Brigitte Engelhardt, M.D. (Engelhardt).

Engelhardt performed a consultative examination of Plaintiff in March 2018. AR 539–44. The ALJ credited Engelhardt's opinion that Plaintiff could sit for six hours in an eight-hour workday, should never climb ladders, ropes, or scaffolds, could occasionally climb steps and stairs, stoop, crouch, and kneel, and should not work at heights or around heavy machinery or pulmonary irritants. AR 23, 543-44. However, the ALJ rejected Engelhardt's opinion that Plaintiff could only endure standing and walking less than two hours in an eight-hour workday, would need to use a walker for all distances and terrains, and was limited to lifting and carrying less than ten pounds occasionally and frequently. AR 543.

The ALJ discredited these exertional limits because they were "inconsistent with the largely unremarkable clinical findings" from Engelhardt's own examination, and because they were contradicted by other objective evidence in the record. AR 23, 558, 772, 774. Plaintiff urges the Court to conclude Engelhardt's examination did support these limits because even though Plaintiff had not yet been prescribed a walker she was nevertheless using one when she arrived at the appointment, and she exhibited difficulty moving about the exam room without it. Dkt. 14 at 4-5. Plaintiff also points to Engelhardt's finding that Plaintiff exhibited decreased sensation in both legs, and no vibration and position sense. *Id*., AR 543.

As noted above, the ALJ discredited Plaintiff's own testimony about the severity of her symptoms and limitations, which Plaintiff does not assign error to. Yet, the ALJ found Plaintiff's unreliable self-reports negatively influenced Engelhardt's "findings" and opinions. For example,

Plaintiff told Engelhardt "she had 'background' retinopathy even though the record shows Plaintiff's eye exams were negative for diabetic retinopathy. AR 23, 539, 666. Plaintiff also claimed she used a walker for more than five years, yet she was not prescribed a walker until almost a year after Engelhardt's finding. AR 23, 39-40, 727. Notably, Plaintiff also indicated to Engelhardt that she "was told by her attorney's office not to take any of her medications on the day of this exam." AR 541. Further, the ALJ noted that Plaintiff had "not been forthcoming [with Engelhardt] about her ability to do household chores or prepare meals." AR 22-24, 313, 547. Thus, it was reasonable for the ALJ to conclude that Plaintiff's unreliable self-reporting influenced Engelhardt's "findings," particularly given Plaintiff's inadequately explained failure to properly treat her diabetes. *See e.g. Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); SSR 16-3p, 2017 WL 5180304, *9.

Combined with the fact Engelhardt did not have access to Plaintiff's longitudinal record, the ALJ's choice to defer to the opinion of state agency medical consultant Howard Platter, M.D. (Platter) and state agency psychological consultant Renee Eisenhauer, Ph.D. (Eisenhauer), rather than Engelhardt, was specific and legitimate. AR 23-24; *see also* 20 C.F.R. §§ 404.1520c(2), 416.920c(2) (The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that conflict with treatment notes).

ii.  Jaime Larson, Psy.D.

Plaintiff claims the ALJ failed to provide legally sufficient reasons to partially reject limitations assessed by consultative psychologist Jamie Larson, Psy.D. (Larson).

Larson performed a psychiatric consultative examination of Plaintiff in March 2018. AR 545–550. Plaintiff told Larson she was disabled due to depression, anxiety, forgetting things, and medical issues. AR 545. Plaintiff said she had seen a behavioral health provider on an outpatient basis for only a few months, back in early 2017. AR 546. Larson opined that Plaintiff could not complete a normal workday without interruptions from a psychiatric condition and would be unable to deal with the usual stress encountered in the workplace. AR 550. The ALJ rejected this limitation, finding it was based upon Plaintiff's discredited self-reports. AR 24.

Plaintiff argues that the ALJ improperly relied upon claimant's failure to seek treatment to discredit Larson's opinion. Dkt. 12 at 6-7. Indeed, the ALJ did find that Larson "appeared to rely heavily" upon Plaintiff's properly discredited subjective testimony. AR 24; SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

While the ALJ's rejection of Plaintiff's own testimony is not at issue, an ALJ may not discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's "subjective allegations." *Ferrrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n2 (9th Cir. 2011) (unpublished opinion). Moreover, both a clinical interview and a mental status exam (MSE) are "objective measures" that "cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

As Plaintiff correctly contends, Larson performed an MSE and also reviewed selected "medical records that were furnished by the Agency." Dkt. 14 at 6. Her report clearly contains several objective findings, such that Plaintiff was "quite overweight for her height," her "oral hygiene appeared to be somewhat lacking," she walked with the assistance of a walker, she was

"tearful on occasion," "somewhat anxious," "somewhat restless," "somewhat agitated," her conversational flow was "somewhat accelerated and disrupted by…tangential conversations," her "affect was labile" and her mood was "anxious," "immediate recall was severely impaired," she "really struggled with calculations," and her concentration, abstract thinking, insight, and judgment were impaired. AR 548-49. Accordingly, the ALJ was not correct that Larson simply credited Plaintiff's subjective reporting.

In sum, this Court concludes that the ALJ did not cite specific and legitimate reasons to reject Larson's opinions, and on remand the ALJ must reevaluate this medical source.

## II. Step Five

At step five, the ALJ found Plaintiff was not disabled. AR 25. Considering her age, education, work experience, and residual functional capacity, and relying on vocational expert testimony, the ALJ determined that Plaintiff as still capable of performing the requirements of representative light occupations, including:

- hand packager (DOT 559.687-074), with 20,900 jobs in the national economy
- ticket seller (DOT 211.467-030), with 33,300 jobs in the national economy
- electrical assembler (DOT 729.687-010), with 79,000 jobs in the national economy

AR 25, 52-53.

According to Plaintiff, even assuming the RFC is correct, the ALJ still erred because "ticket seller" requires "Level 3 reasoning," which conflicts with the limitation to "simple, routine, and repetitive tasks." Dkt. 12 at 8-9 (citing DOT at 211.467-030).

Defendant concedes the "ticket seller" job is in conflict with Plaintiff's RFC. Dkt. 13 at 13 (*citing Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("Today, we join the Tenth Circuit and hold that there is an apparent conflict between the residual functional capacity to

perform simple, repetitive tasks, and the demands of Level 3 Reasoning.")). However, Defendant maintains this error was harmless because the two remaining occupations only require "Level 2 reasoning," and there are almost 100,000 of those jobs in the national economy. Dkt.13 at 13; AR 25, 52-53.

However, Plaintiff also argues that she submitted evidence with her request for reconsideration to the Appeals Council suggesting the occupations of hand packager and electrical assembler do not exist in significant number in the national economy, either. AR 4, 239, 241–46. In denying Plaintiff's request for review the Appeals Council cited the brief submitted by Plaintiff (which includes this argument) indicating Defendant considered but rejected this evidence. AR 3-4. According to Defendant, Plaintiff forfeited her right to remand on this basis because Plaintiff was represented by counsel, who "failed to raise a single question about the job numbers before the ALJ." Dkt. 13 at 13 (*citing Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (If an ALJ declines to admit rebuttal evidence concerning the VE's step five findings, "a claimant may raise new evidence casting doubt on a VE's job estimates before the Appeals Council, provided that evidence is both relevant and 'relates to the period on or before the ALJ's decision.'")).

"[H]armless error principles apply in the Social Security context." *Molina*, 674 F.3d at 1115. An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Id.; see also Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Ninth Circuit has stated "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)

(quoting *Stout*, 454 F.3d at 1055-56). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

While the Court concurs with Defendant that the identification of the ticket seller job resulted in harmless error, the Court does not agree that this ends our inquiry. Although Plaintiff was represented by counsel at the hearing, and counsel did not question the jobs numbers at that time, unlike in *Shaibi*, supra, here counsel did submit Job Browser Pro numbers to the Appeals Council along with a supporting brief. ALJ. Tr. 54-55. This Court is required to evaluate this evidence to determine whether the ALJ's decision is supported by substantial evidence. *Brewes v. Commissioner of Social Security*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record the district court must consider it in determining whether the Commissioner's decision is supported by substantial evidence).

In light of the fact the ALJ failed to provide specific and legitimate reasons for rejecting some of the medical testimony (which could affect Plaintiff's RFC upon reconsideration[1]), and because Plaintiff's age category changed during the pendency of her claim, making her a person "closely approaching advanced age," this Court concludes that the ALJ's step five finding does not rest upon substantial evidence, and must be reconsidered, and is not harmless error. Tr. 24.

---

[1] Upon reconsideration of Larson's report, if the ALJ determines that one or more of the limitations opined by Larson should have been included in Plaintiff's RFC, then the ALJ would need to pose an updated hypothetical question to the VE. Thus, the ALJ's error with regard to Larson's opinion is not harmless.

## CONCLUSION

In conclusion, this Court finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further proceedings consistent with this Order.

Dated this 23rd day of April, 2021.

*David W. Christel*
David W. Christel
United States Magistrate Judge